BROWN v SIANG

Docket No. 45249. Submitted December 15, 1980, at Detroit.—Decided June 5, 1981. Leave to appeal applied for.

Dorothy R. Brown died as a result of massive hemorrhaging following a liver biopsy performed on her by Dr. Go Thiek Siang in Sinai Hospital of Detroit. Virginia Brown, administratrix of the estate of Dorothy R. Brown, brought a medical malpractice action against Dr. Siang and Sinai Hospital, jointly and severally, in Wayne Circuit Court. Sinai filed a motion for accelerated judgment claiming that the decedent had signed an agreement to arbitrate all claims arising from the health care she would receive while in the hospital and that the arbitration agreement rendered the circuit court without jurisdiction to consider plaintiff's claim. The trial court granted Sinai's motion for accelerated judgment and ordered plaintiff to submit the dispute to arbitration, Charles S. Farmer, J. Plaintiff filed a motion to stay arbitration proceedings and the motion was granted. Plaintiff appeals the order granting accelerated judgment, contending that the arbitration act is unconstitutional in three respects: 1) that the statute violates the plaintiff's due process right to a hearing before a fair and impartial tribunal in that it requires that one of the three arbitration panel members be a physician or hospital administrator; 2) that, due

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Arbitration and Award § 15.

[2] 16 Am Jur 2d (Rev), Constitutional Law § 251 *et seq.*

[3-5] 5 Am Jur 2d, Arbitration and Award § 11 *et seq.*

[6] 5 Am Jur 2d, Arbitration and Award §§ 9, 11, 44.

61 Am Jur 2d (Rev), Physicians, Surgeons, and Other Healers §§ 374, 376.

[7] 5 Am Jur 2d, Arbitration and Award § 108 *et seq.*

[8] 61 Am Jur 2d (Rev), Physicians, Surgeons, and Other Healers § 374.

Arbitration of medical malpractice claims. 84 ALR3d 375.

[9] 5 Am Jur 2d, Arbitration and Award § 97 *et seq.*

46 Am Jur 2d, Judges § 166 *et seq.*

[10] 5 Am Jur 2d, Arbitration and Award §§ 98, 101, 167, 181.

[11-13] 16 Am Jur 2d, Conflict of Laws § 79.

[14] 17 Am Jur 2d, Contracts §§ 153, 154.

to the circumstances surrounding all patients when they are asked to sign the arbitration agreement, the right to judicial process is not knowingly waived, resulting in a violation of due process of law; and 3) that the arbitration agreement is an unenforceable contract of adhesion. *Held:*

1. Plaintiff has failed to submit clear proof that the arbitration act denies due process. The safeguards within the statute to insure impartiality cure any possibility that an irate health care provider will serve on the arbitration panel. Furthermore, where there is evidence of partiality by an arbitrator, the court rules provide that the arbitration award shall be vacated by the court. Finally, the inclusion of a health care expert on the panel is desirable in view of the highly technical nature of the proceedings.

2. There is no support for plaintiff's allegation of nonconsensual waiver of a constitutional right. The only constitutional right which the decedent relinquished by signing the arbitration agreement was the right to a trial before a court of law. There is no evidence that the decedent was induced to sign the agreement by fraud or that she was unable to understand the agreement and there is no evidence that the decedent did not knowingly relinquish her right to trial.

3. Plaintiff has failed to sustain her burden of proving by clear evidence that the arbitration agreement is a contract of adhesion and beyond the reasonable expectation of the parties. The form signed by the decedent clearly states that the agreement to arbitrate is not a prerequisite to care. A patient is given 60 days after execution of an arbitration agreement to revoke the agreement, thereby alleviating the possibility of coerciveness. A patient is also given a realistic and fully informed choice based upon the information contained in the agreement form and the information booklet presented to each patient. There is no evidence of unfair advantage being given to the defendants by this statute. The statute is not unconstitutional.

The judgment of the trial court is affirmed, the stay of proceeding is removed and the matter is remanded for arbitration in accordance with the terms of the agreement.

CYNAR, P.J., concurred in the result.

1. ARBITRATION — ARBITRATION AGREEMENTS — JUDICIAL QUESTION.
   The validity of an arbitration agreement is essentially a judicial question.

2. CONSTITUTIONAL LAW — STATUTES — BURDEN OF PROOF.

The burden of proving an alleged constitutional violation rests on the party asserting it and, if a statute can be construed in a manner consistent with the constitution, the party alleging that the statute is unconstitutional has failed to meet the burden of proof.

3. HEALTH — ARBITRATION AGREEMENTS — STATUTES.

The mandatory provisions of agreements to arbitrate disputes over services rendered by a health care provider are provided by statute (MCL 600.5041, 600.5042, 600.5046[2]; MSA 27A.5041, 27A.5042, 27A.5046[2]).

4. HEALTH — ARBITRATION AGREEMENTS — STATUTES.

Neither patients nor health care providers are required by law to enter into agreements to arbitrate disputes over services rendered by the health care providers (MCL 600.5041[2]; MSA 27A.5041[2]).

5. HEALTH — ARBITRATION AGREEMENTS — STATUTES.

A health care provider cannot, as a prerequisite to treatment, require a patient to enter into an agreement to arbitrate disputes over services rendered by the health care provider (MCL 600.5041; MSA 27A.5041).

6. HEALTH — MEDICAL SERVICES — ARBITRATION AGREEMENTS — STATUTES.

Binding arbitration is the only remedy available for settlement of malpractice disputes between a patient and a health care provider where an arbitration agreement has been properly executed and not revoked by the patient within 60 days of execution (MCL 600.5041; MSA 27A.5041).

7. HEALTH — MEDICAL SERVICES — ARBITRATION HEARINGS — STATUTES.

The parties to an informal arbitration hearing at which a dispute over services provided to a patient by a health care provider is being heard may be represented by counsel and be heard and may present evidence and cross-examine witnesses (MCL 600.5043[1][a]; MSA 27A.5043[1][a]).

8. HEALTH — MEDICAL MALPRACTICE ARBITRATION ACT — STATUTES.

The medical malpractice arbitration act in part provides: 1) for a three-member arbitration panel comprised of one lawyer, one lay person and one health care provider; 2) that the members of the panel will be selected by the parties from lists compiled by the American Arbitration Association, and, if the parties cannot agree upon the members, the Association will make the

selection, subject to challenge for cause by either party; 3) for establishment of a procedure for screening the arbitrators for bias; 4) that a majority of the panel may grant any relief deemed equitable; 5) that an award must be accompanied by a written opinion containing findings on enumerated issues; and 6) that appeals from an arbitration award are governed by the general arbitration law and applicable court rules (MCL 600.5040 *et seq.;* MSA 27A.5040 *et seq.).*

9. CONSTITUTIONAL LAW — DUE PROCESS — PREJUDICE.

A judge or decisionmaker is disqualified on the basis of due process from hearing a case without a showing of actual bias where the judge or decisionmaker (1) has a pecuniary interest in the outcome of the case, (2) has been the target of personal abuse or criticism from the party before him, (3) is enmeshed in other matters involving the parties, or (4) might have prejudged the case because of prior participation as an accuser, investigator, fact finder or initial decisionmaker.

10. ARBITRATION — PREJUDICE — COURT RULES.

An arbitration award shall be vacated by the court where there is evidence of partiality by an arbitrator (GCR 1963, 769.9[1][b]).

11. WORDS AND PHRASES — ADHESION CONTRACTS.

The term "adhesion contract" refers to standardized contract forms offered to consumers of goods and services on essentially a "take it or leave it" basis without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing in the form contract.

12. CONTRACTS — ADHESION CONTRACTS.

The distinctive feature of a contract of adhesion is that the weaker party has no realistic choice as to its terms.

13. CONTRACTS — ADHESION CONTRACTS.

An adhesion contract, in order to be unenforceable, must contain terms which the adherent is unaware of and which are beyond the reasonable expectations of an ordinary person or are oppressive or unconscionable.

14. CONTRACTS — ENFORCEABILITY.

Contracts must be freely entered into in order to be enforceable.

*Lopatin, Miller, Bindes, Freedman, Bluestone,*

*Erlich & Rosen* (by *Steven G. Silverman* and *Michael Gagleard),* for plaintiff.

*Kitch, Suhrheinrich, Smith, Saurbier & Drutchas, P.C.* (by *Richard R. DeNardis* and *Michele M. Arene),* for defendant.

Before: CYNAR, P.J., and BASHARA and BEASLEY, JJ.

BASHARA, J. Plaintiff filed suit against defendants alleging medical malpractice. The complaint stated that plaintiff's decedent, Dorothy Ross Brown, entered the defendant Sinai Hospital of Detroit (Sinai) on May 21, 1976. While the decedent was in Sinai, defendant Dr. Go Thiek Siang performed a liver biopsy on her, resulting is massive hemorrhaging. Purportedly due to defendants' negligence, she died on June 20, 1976.

Sinai filed a motion for accelerated judgment pursuant to GCR 1963, 116.1(2) and 769.1. The motion alleged, and was supported by way of affidavit, that plaintiff's deceased, upon entering the hospital, had signed an agreement to arbitrate all claims arising from the health care received during that admission. It was asserted that the arbitration agreement rendered the circuit court without jurisdiction to consider plaintiff's malpractice claim pursuant to the R. Hood-McNeely-Geake Malpractice Arbitration Act of 1975, MCL 600.5040 *et seq.;* MSA 27A.5040 *et seq.* (the Act). Plaintiff appeals the trial court's order granting accelerated judgment to Sinai and ordering the plaintiff to submit the dispute to arbitration.[1]

Plaintiff presents three issues of first impression

---

[1] The matter has been stayed by the trial court and American Arbitration Association pending the outcome of this appeal.

to this Court. She claims the Act is unconstitutional on the following bases:

(1) the statute violates plaintiff's due process right to a hearing before a fair and impartial tribunal in that it requires that one of the three arbitration panel members be a physician or hospital administrator;[2]

(2) due to the circumstances surrounding all patients when they are asked to sign the arbitration agreement,[3] the right to judicial process is not

---

[2] "An arbitration under this chapter shall be heard by a panel of 3 arbitrators. One shall be an attorney who shall be the chairperson and shall have jurisdiction over prehearing procedures, 1 shall be a physician, preferably but not necessarily from the respondent's medical specialty, and the third shall be a person who is neither a doctor, lawyer, or representative of a hospital or insurance company. Where a case involves a hospital only, a hospital administrator may be substituted for a physician." MCL 600.5044(2); MSA 27A.5044(2).

[3] The standard form which plaintiff signed reads as follows:

"I understand that this hospital and I by signing this document agree to arbitrate any claims or disputes (except for disputes over charges for services rendered) which may arise in the future out of or in connection with the health care rendered to me during this hospital stay and/or emergency room visit by this hospital, its employees and those of its independent staff doctors and consultants who have agreed to arbitrate.

"I understand that Michigan Law gives me the choice of trial by judge or jury or of arbitration. I understand that arbitration is a procedure by which a panel that is either mutually agreed upon or appointed decides the dispute rather than a judge or jury. I freely choose arbitration, and I agree that a judgment of any circuit court may be rendered upon any award or determination made pursuant to this agreement. I also understand that any arbitration will be conducted in accordance with Michigan Law and the Michigan Medical Arbitration Rules, as approved by the Commissioner of Insurance.

"I understand that this agreement to arbitrate is binding on me and all my agents, representatives and heirs and assigns, as well as on this hospital, its employees and those of its independent staff doctors, and consultants who have agreed to arbitrate.

"I certify that I have read this agreement or have had it read to me and that I fully understand its content and execute this agreement of my own free will. I have received a complete copy of the booklet which explains this agreement.

"THIS AGREEMENT TO ARBITRATE IS NOT A PREREQUISITE TO HEALTH CARE OR TREATMENT, AND MAY BE REVOKED WITHIN 60 DAYS AFTER DISCHARGE BY NOTIFICATION IN WRITING TO: _____.

"/s/_____          /s/_____

knowingly waived, constituting a violation of due process of law; and

(3) the arbitration agreement is a contract of adhesion rendering it unenforceable.

We note that the question of the validity of the underlying agreement is essentially a judicial question. *Kaleva-Norman-Dickson School Dist No 6, Counties of Manistee, Lake & Mason v Kaleva-Norman-Dickson School Teachers Ass'n*, 393 Mich 583; 227 NW2d 500 (1975). Therefore, defendants' contention that the trial court was without jurisdiction to consider the validity of the contract lacks merit. See *Capman v Harper-Grace Hospital*, 96 Mich App 510; 294 NW2d 205 (1980).

The burden of proving an alleged constitutional violation rests on the party asserting it. If the statute can be construed in a manner consistent with the constitution, the party alleging unconstitutionality has failed to meet that burden. *Dearborn Twp v Dearborn Twp Clerk*, 334 Mich 673; 55 NW2d 201 (1952), *Naudzius v Lahr*, 253 Mich 216; 234 NW 581 (1931), *Ferguson v Skrupa*, 372 US 726; 83 S Ct 1028; 10 L Ed 2d 93 (1963). We have carefully reviewed the record, briefs and legal authority and conclude that the Act is constitutional.

## I. *The Act*

The statute was enacted in 1975 as a response to the "medical malpractice crisis", the high cost of health care due to the increased incidence of medi-

---

"INSTRUCTIONS FOR USE:

"Give Booklet with proposed agreement to patient; if agreement is signed, place duplicate original in patient's file.

"Emergency Room: Do not present for patient signature until after emergency care has been completed.

"FOR FURTHER INFORMATION CONTACT: American Arbitration Association, City National Bank Building, No. 1035, Detroit, Michigan, 48226, Phone: 1 (800) 482-0662."

It is not disputed that the above form meets the requirements of the statute, §§ 5041, 5042 and 5046(2).

cal malpractice litigation. Comment, *Michigan's Medical Malpractice Legislation—Prognosis: Curable Defects*, 55 U of D J of Urban Law, pp 309-311 (1978). The Act describes the mandatory provisions of agreements to arbitrate disputes over services rendered by a health care provider,[4] §§ 5041, 5042, 5046(2). Neither the patient nor the health care provider is required by law to enter into an agreement to arbitrate disputes. The health care provider may not require a patient to enter into the agreement as a prerequisite to treatment, § 5041(2). However, where the agreement has been properly executed and not revoked by the patient within 60 days, binding arbitration is the only remedy available for settlement of malpractice disputes.

The Act details the procedure to be followed at an informal arbitration hearing, as well as the rules of discovery. §§ 5048-5052. For example, the parties may be represented by counsel, be heard, present evidence and cross-examine witnesses, § 5043(1)(a).

The three-member arbitration panel[5] is selected by the parties from lists compiled by the American Arbitration Association (association), § 5044(3). If the members cannot be selected by mutual agreement, the association makes the selection, subject to challenge for cause by either party, § 5044(5). A procedure is established for screening the arbitrators for bias, § 5045.

A majority of the panel may grant any relief

---

[4] " 'Health care provider' means a person, partnership, or corporation lawfully engaged in the practice of medicine, surgery, dentistry, podiatry, optometry, chiropractic, nursing, or a person dispensing drugs or medicines." MCL 600.5040(2)(b); MSA 27A.5040(2)(b). As used in this opinion, the term "health care provider" includes hospitals. See MCL 600.5040(2)(c); MSA 27A.5040(2)(c).

[5] See footnote 2, *supra.*

deemed equitable, §§ 5054, 5056. The written opinion accompanying the award must contain findings on enumerated issues, §§ 5054-5056. Appeals from the arbitration award are governed by the general arbitration law and applicable court rules.[6]

## II. *Composition of the Arbitration Panel*

The panel is composed of one lawyer, one lay person and one health care provider. Plaintiff alleges that inclusion of one health care provider on the panel violates her due process right to an impartial tribunal. In support of this argument, the depositions of insurance experts were submitted to the trial court. In summary, the witnesses stated that an increase in the amount of money awarded in malpractice cases will be reflected in higher insurance premiums for all health care providers in the state. Plaintiff asserts, based upon this testimony, that a physician or hospital administrator who sits on the arbitration panel is necessarily biased due to the direct pecuniary interest he possesses in purchasing malpractice insurance.

Several circuit courts of this state have considered the issue, the majority of which have concluded that the plaintiffs failed to submit clear, plain proof of bias. *Cf., Malek v Jayakar* (Wayne County, Civil Action No. 78-802-604-NM),[7] *Yager v Locke* (Lenawee County, No. 79-07-627-NM), *Lorenz v Mendelsohn* (Oakland County, No. 79-187-555-NM), *Chaston v Stubbs* (Washtenaw County, No. 80-18656-NM), *Pipper v DiMusto* (Macomb County, No. 76-8188-NM). But see *Taylor v Detroit Bank & Trust Co* (Macomb County, No. 77-1906-

---

[6] MCL 600.5001 *et seq.;* MSA 27A.5001 *et seq.,* GCR 1963, 769.

[7] The trial court adopted Judge Gilmore's opinion in *Malek, supra,* in ruling in defendant's favor.

NM), *Manuel v Pierce* (Wayne County, No. 79-929209-NM).

Plaintiff cites *Crampton v Dep't of State*, 395 Mich 347; 235 NW2d 352 (1975), in support of her position. Plaintiff in *Crampton* challenged the constitutionality of a statute which established a license appeal board for review of driver license revocations. It was alleged that the board was biased since it was composed of a Lansing police officer and representatives of both the Attorney General and Secretary of State offices. The Court held that it is impermissible for the police and attorney general officials to act as adjudicators in law enforcement disputes because their very purpose is to arrest and prosecute law violators. The Court noted that "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable". *Id.*, 356.

Since the purpose of medicine is not to defend against malpractice claims, the relationship between the health care provider who is selected as arbitrator and the plaintiff bringing the claim is not analogous to the scenario of *Crampton.* However, the *Crampton* opinion is helpful in that it recognizes the situations in which the United States Supreme Court has found the probability of bias constitutionally intolerable. The risk may be present where the decisionmaker:

"(1) has a pecuniary interest in the outcome;

"(2) 'has been the target of personal abuse or criticism from the party before him';

"(3) is 'enmeshed in [other] matters involving petitioner * * *'; or

"(4) might have prejudged the case because of prior participation as an accuser, investigator, fact finder or initial decisionmaker." *Id.*, 351. (Footnotes omitted.)

Plaintiff bases her claim of bias on the allegation that the health care panel member has a pecuniary interest in the outcome of medical malpractice litigation. She relies heavily on *Ward v Village of Monroeville,* 409 US 57, 59-61; 93 S Ct 80; 34 L Ed 2d 267 (1972). In Ohio, mayors were permitted by statute to sit as judges in local ordinance violation trials. The evidence presented established that the defendant Village of Monroeville was substantially supported by fines imposed in the mayor's court. In holding the statute unconstitutional, the United States Supreme Court stated:

> "[T]he test is whether the mayor's situation is one 'which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused * * *.' * * * Plainly that 'possible temptation' may also exist when the mayor's executive responsibilities for village finances may make him partisan to maintain the high level of contribution from the mayor's court. This, too, is a 'situation in which an official occupies two practically and seriously inconsistent positions, one partisan and the other judicial, [and] necessarily involves a lack of due process of law in the trial of defendants charged with crimes before him.'" *Id.,* 60.

The statute under scrutiny in *Ward* and the Act are not comparable. The Act allows the parties to agree to waive the right to a jury trial and submit a civil dispute to binding arbitration. No criminal rights are involved. The parties select the panel members, who must withstand screening for bias. MCL 600.5044, 600.5045; MSA 27A.5044, 27A.5045. No individual panel member is faced with the dilemma of conflicting official positions, as was the mayor of Monroeville.

Furthermore, the evidence in *Ward* shows a direct pecuniary interest of the mayor in levying higher fines. The evidence in the case at bar is not conclusive; there has been no showing that health care providers will receive lower insurance premiums as the direct result of the arbitration process. Therefore, we find *Ward* to be factually distinguishable from the case at hand.

Courts in other jurisdictions have also considered this claim within their respective statutory schemes. In *State ex rel Strykowski v Wilkie,* 81 Wis 2d 491; 261 NW2d 434 (1978), the Wisconsin Supreme Court held that the mediation statute, which required submission of malpractice issues to a mediation panel prior to trial, met the requirements of due process although two of the five panel members were health care providers. The Court held:

> "The petitioners argue that panel members who are health care providers are financially interested in panel decisions because they, along with all other health care providers in the state, pay annual assessments to maintain the patients' compensation fund. However, any financial interest inherent in the structure of Chapter 655, Stats, is too remote and speculative to require disqualification. Absent evidence to the contrary, adjudicators must be presumed to be persons of honesty and integrity. See *Withrow v Larkin,* 421 US 35, 47; 95 S Ct 1456; 43 L Ed 2d 712 (1975).
>
> "Petitioners' claim is not one of actual bias. There is no suggestion that any panel member bears them ill will or has a financial stake in their particular claims. It may be assumed that if such actual bias were alleged and demonstrated, panel members would be subject to the common-law duty of disqualification. See *Kachian v Optometry Examining Board, supra,* [44 Wis 2d] at 12, 13 [170 NW2d 743]. Because there is no indication of actual bias, and because the statutory procedure for the selection of the panel does not suggest a probability of

systematic bias or prejudice, the requirements of due process are satisfied. *Cf., Naus v Jt SD No 1 Sheboygan Falls,* 76 Wis 2d 104, 114; 250 NW2d 725 (1977)." *Id.,* 515-516. (Footnote omitted.)

An additional consideration noted by the Court was the fact that the screening panels are required to consider highly technical medical issues. Elimination of the health care expert from the panel would "emasculate" the review process. *Id.,* 517. *Parker v Children's Hospital of Philadelphia,* 483 Pa 106; 394 A2d 932 (1978), and *Johnson v St Vincent Hospital, Inc,* — Ind —; 404 NE2d 585 (1980), have reached the same conclusion as the *Strykowski* Court. Also see *Woods v Holy Cross Hospital,* 591 F2d 1164, 1177, fn 21 (CA 5, 1979).

We recognize that the decisions rejecting plaintiff's claim of bias are distinguishable from the case at bar since the statutory schemes in our sister states require only that the parties submit to mediation, the results of which are fully admissible at trial.[8] The arbitration envisioned in the Act, although binding in result, is voluntary. Therefore, the distinction is of little consequence, neither statutory method requiring nonvoluntary relinquishment of the right to a trial.

We hold plaintiff has failed to submit clear proof that the statute is in violation of due process. The Act requires that only one of three arbitrators be a member of the health care community. Another

---

[8] "The difference between screening and arbitration is significant. Screening panels make only advisory recommendations; there is no final determination regarding liability or damages. Any figure suggested is solely for the purpose of aiding the parties in reaching a settlement. There is no waiver of the right to a court or jury trial. Binding arbitration, on the other hand, 'is a complete substitute for an action at law.' Submission of a dispute to binding arbitration severely limits the right to appeal. Awards are final and res judicata in most jurisdictions." 55 U of D J of Urban Law, pp 309, 314-315, *supra.* (Footnotes omitted.)

member of the panel must be an attorney. The third member is chosen from the general public. A result may only be reached by a majority of the tribunal. No one member of the panel can be presumed to direct the outcome.

The safeguards within the statute to insure impartiality cure any possibility that an irate health care provider will serve on the panel. In addition, GCR 1963, 769.9(1)(b) provides that an arbitration award shall be vacated by the court where there is evidence of partiality by an arbitrator. Panel members are presumed to be persons of honesty and integrity. *Parker, supra,* 130. We find no evidence in the record that all physicians disfavor equitable results in malpractice cases.

Furthermore, there has been no evidence indicating that the amount of malpractice awards or the cost of malpractice has decreased since the Act took effect.[9] In addition, the nexus between the size and frequency of the awards and malpractice insurance premiums is too remote in view of the fact that several other criteria are considered in setting rates.

Finally, we are in agreement with the Wisconsin Court that the inclusion of an expert on the panel is desirous in view of the highly technical nature of the proceedings. *Strykowski, supra,* 516.

### III. *Knowledgeable Waiver of Constitutional Rights*

Plaintiff asks this Court to presume that her decedent was unable to understand the ramifica-

---

[9] The Act orders the Legislature to form a joint committee for the purpose of reviewing the operation and experience of the Act. § 5065. Although the provision requires that a report be made by the committee before September 1, 1979, no evidence of such a document has been submitted to this Court for review.

tions of signing the arbitration agreement. Based upon that assumption, we are asked to hold the statute unconstitutional as forcing patients to relinquish unknown rights. Plaintiff does not argue that the form signed by her decedent was contrary to the statute.[10] Rather, it is the statute itself which is under scrutiny.

Plaintiff asserts that many aspects of the statute are not revealed to the patient when the agreement is signed. For example, she complains that her decedent was not informed that informal rules of evidence are followed at arbitration proceedings. This provision, as well as the remaining procedural steps outlined in the statute which are not expressed in the form agreement,[11] does not result in relinquishment of a constitutional right.

It must be emphasized that plaintiff is not challenging the arbitration procedure established in the statute as lacking minimal due process standards. Her only argument pertinent to this issue is that the procedure is not detailed in full in the agreement.

The only constitutional right which the plaintiff's decedent relinquished by signing the agreement is the right to a trial before a court of law, Const 1963, art 1, § 14. The form which plaintiff's decedent signed states:

"I understand that Michigan Law gives me the choice

---

[10] See footnote 3, *supra.*

[11] Plaintiff points to the following requirements of the statute which the standard agreement did not detail:

(1) If the panel members cannot be agreed upon by the parties, the association makes the selection, subject to challenge for cause;

(2) Authoritative treatises may be submitted into evidence;

(3) One panel member must be a health care provider (This information is included in the booklet but not in the agreement);

(4) The scope of review is less broad in arbitration appeals than in civil appeals.

of trial by judge or jury or of arbitration. I understand that arbitration is a procedure by which a panel that is either mutually agreed upon or appointed decides the dispute rather than a judge or jury. I freely choose arbitration, and I agree that a judgment of any circuit court may be rendered upon any award or determination made pursuant to this agreement. I also understand that any arbitration will be conducted in accordance with Michigan Law and the Michigan Medical Arbitration Rules, as approved by the Commissioner of Insurance."

Plaintiff presents no evidence that her decedent was induced to sign this agreement by fraud or that she was unable to understand it. We believe that the above language is plain and that, by signing the contract, plaintiff's decedent knowingly relinquished her right to trial. This being the only constitutional right waived by entering into the agreement, we find no support for plaintiff's allegation of nonconsensual waiver of a constitutional right.

## IV. *The "Adhesion" Contract*

Plaintiff finally contests the validity of the agreement as being a contract of adhesion. Plaintiff relies upon *Wheeler v St Joseph Hospital,* 63 Cal App 3d 345; 133 Cal Rptr 775; 84 ALR3d 343 (1976), which defines adhesion contract as follows:

"The term 'adhesion contract' refers to standardized contract forms offered to consumers of goods and services on essentially a 'take it or leave it' basis without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing in the form contract. * * * The distinctive feature of a contract of adhesion is that the weaker party has no realistic choice as to its terms." *Id.,* 356.

A finding that the contract is one of adhesion is only the first step in rendering it unenforceable. It must also be determined that "the terms of which the adherent was unaware are beyond the reasonable expectations of an ordinary person or are oppressive or unconscionable". *Id., 357.*

This Court has recognized the obvious principle that in order for contracts to be enforceable, they must be entered into freely. In *Allen v Michigan Bell Telephone Co,* 18 Mich App 632; 171 NW2d 689 (1969), the same two-tiered test was succinctly stated:

"(1) What is the relative bargaining power of the parties, their relative economic strength, the alternative sources of supply, in a word, what are their options?; (2) Is the challenged term substantively reasonable?" *Id.,* 637.

The parties in *Wheeler, supra,* entered into a private contract to arbitrate medical malpractice disputes. No medical malpractice arbitration statute was involved. The agreement was unobtrusively inserted into the middle of a document entitled, "Conditions of Admission". There was no evidence that plaintiff was required to agree to the arbitration provision as a condition precedent to admission. The Court held that the agreement was an adhesion contract, noting:

"The admission room of a hospital contains no bargaining table where, as in a private business transaction, the parties can debate the terms of their contract." *Wheeler, supra,* 357.

The Court instructed health care providers to call the arbitration agreement to the patients' attention and give them a reasonable explanation of all options available. The Court stated:

"The hospital's admission clerk need only direct the patient's attention to the arbitration provision, request him to read it, and give him a simple explanation of its purpose and effect, including the available options." *Wheeler, supra,* 361. (Footnote omitted.)

It must be recognized, in applying *Wheeler* and *Allen* to the case at bar, that plaintiff is not asserting an inducement to sign the agreement by fraud, duress, or corruption. Certainly, these contract defenses remain available to patients on a case-by-case basis. GCR 1963, 769.9(1), MCL 600.5001; MSA 27A.5001. *Cf., Capman v Harper-Grace Hospital, supra,* 515.

Rather, plaintiff claims that the standardized form is always an adhesion contract due to the certain bargaining advantage the hospital or doctor has over the patient. We disagree.

The form clearly states that the agreement to arbitrate is not a prerequisite to care. Furthermore, the patient is given 60 days after execution in which to revoke the agreement, thereby alleviating the possibility of coerciveness in the admission room found in *Wheeler.* The patient has a realistic and fully informed choice based upon the form and the booklet presented.

Even if it can be said that the patient feels obligated to sign the agreement in order to receive the best health care possible, we believe that the terms of the agreement are within the reasonable expectation of the patient. Finally, we find no evidence of unfair advantage being given to the defendants in the Act.

In summary, plaintiff has failed to sustain the burden of proving by clear evidence that the arbitration agreement, which conforms to the mandates of the Act, is a contract of adhesion and beyond the reasonable expectation of the parties.

We conclude, therefore, that the Act is not unconstitutional. The judgment of the trial court is affirmed. The stay of proceeding is removed and the matter is remanded for arbitration in accordance with the terms of the agreement.

No costs, the constitutionality of a statute being at issue.

CYNAR, P.J., concurs in the result reached for the reasons set forth in his opinion in *Morris v Metriyakool,* 107 Mich App 110; 309 NW2d 910 (1981).