AMWAKE v MERCY-MEMORIAL HOSPITAL

Docket No. 78-3334. Submitted June 19, 1979, at Detroit.—Decided
　　September 20, 1979. Leave to appeal applied for.

　　Roma K. Anteau first entered Mercy-Memorial Hospital on
　　March 12, 1977, for the treatment of a cyst. She returned for
　　further treatment on March 21, 1977. On each occasion she
　　signed a standard hospital arbitration agreement form. On
　　March 22, 1977, the cyst was removed by Dr. Ansari. James
　　Malone was the anesthetist. After the operation, Mrs. Anteau
　　became comatose. On March 25, 1977, the still-comatose Mrs.
　　Anteau was transferred to another hospital. The arbitration
　　forms signed by Mrs. Anteau provided that any claims or
　　disputes which may arise in connection with the health care
　　furnished were subject to arbitration unless revoked by the
　　patient by written notice to the hospital within 60 days after
　　discharge. On May 24, 1977, James Anteau, Roma's estranged
　　husband, filed a medical malpractice suit as next friend against
　　the hospital, doctor and anesthetist in behalf of his wife and for
　　his loss of consortium. The defendants moved to compel arbitra-
　　tion according to the signed arbitration agreements. The com-
　　plaint was dismissed but without prejudice to the Anteaus'
　　right to arbitration, Monroe Circuit Court, William J. Weipert,
　　Jr., J. On or about June 15, 1977, Mrs. Anteau came out of her
　　coma. On October 24, 1977, Jacob D. Amwake, father and as
　　special guardian of Mrs. Anteau, instituted another action
　　against the hospital, Dr. Ansari and James Malone. Again,
　　defendants moved for judgment requesting that compulsory
　　arbitration be ordered in accordance with the court's order in
　　the first case. William J. Weipert, Jr., J., granted the motion.
　　Plaintiff appeals. *Held:*

　　　1. Mrs. Anteau lost her right to a civil action for malpractice
　　damages through the initiation of next friend and special

REFERENCES FOR POINTS IN HEADNOTES
[1] 41 Am Jur 2d, Incompetent Persons § 118.
[2] [No Reference]
[3] 51 Am Jur 2d, Limitation of Actions § 208.
[4] 51 Am Jur 2d, Limitation of Actions § 186.

guardian actions while she was helpless and comatose or in the process of recovery. Such clear injustice should not go uncorrected.

2. The arbitration agreements were revoked in a timely manner. Mrs. Anteau had 60 days after discharge to notify the hospital. The transfer to another hospital did not operate as a discharge because she was still in the second hospital in connection with her March 22, 1977, surgery when the second suit was filed. Since she was not discharged from hospital care when the first and second suits were filed, the 60-day period had not even begun to run and her notice to revoke was effective.

3. Even assuming the 60-day period began to run when Mrs. Anteau was transferred from hospital to hospital, the complaint in the first lawsuit was filed exactly 60 days after the transfer. And, since an action is commenced by the filing of a complaint, the filing of the first complaint on the 60th day after the transfer would serve to impliedly revoke the arbitration agreements.

4. A comatose person, who loses her cause of action because she is unable to comprehend her rights or exercise them in her best interests during the running of the period of limitations, should be treated like a minor or insane or imprisoned person and be given a one-year grace period after removal of disability in order to bring an action.

5. When Mrs. Anteau regained consciousness on June 15, 1977, the first case was already pending against the defendants: therefore, defendants received notice of revocation before the 60-day period began to run.

6. The initiation of the first case revoked the arbitration agreements. Once the arbitration agreements were revoked the two-year statute of limitations for medical malpractice became applicable. The second case commenced by Jacob D. Amwake was filed well within the two-year period and may proceed to trial. Mrs. Anteau's estranged husband may join in the case and present whatever pertinent claims he may have.

Reversed and remanded.

1. PARTIES — EQUITY — COMATOSE PERSONS — INJUSTICE — PROTECTION OF RIGHTS.

An established and familiar equity precedent protects the rights of old and feeble-minded or insane persons from being spoiled of their property; although not a matter in equity, this same precedent should apply to a person who is in a coma during the initiation of civil suits by a next friend or guardian.

2. LIMITATION OF ACTIONS — HOSPITALS — ARBITRATION — PATIENT TRANSFERS — REVOCATION OF AGREEMENT — NOTICE.

   A statute provides that a person receiving health care or treatment, or his legal representative, but not the hospital, may revoke an agreement to arbitrate within 60 days after discharge from the hospital by notifying the hospital in writing; a simple transfer from one hospital to another is not a discharge and cannot start the running of the 60-day period where it was apparent that the patient still required care for a condition which arose during her hospital stay before the transfer.

3. LIMITATION OF ACTIONS — CIVIL ACTIONS — COMPLAINTS — COURT RULES.

   A civil action is commenced, for statute of limitation purposes, by filing a complaint with the court (GCR 1963, 101).

4. LIMITATION OF ACTIONS — COMATOSE PERSONS — GRACE PERIOD — STATUTES.

   A comatose person who is unable to comprehend her rights or exercise them in her best interest during the running of the period of limitations, like a minor or insane or imprisoned person, should be given a grace period after removal of disability in order to bring an action (MCL 600.5851[1]; MSA 27A.5851[1]).

*William E. Wade,* for plaintiff.

*Kitch, Suhrheinrich, Smith, Saurbier & Drutchas, P.C.* (by *Gregory Drutchas* and *Scott D. Feringa),* for Mercy-Memorial Hospital.

Before: N. J. KAUFMAN, P.J., and D. C. RILEY and J. X. THEILER,* JJ.

N. J. KAUFMAN, P.J. Plaintiff, a special guardian of the estate of Roma K. Anteau, a physically infirm person, appeals by right from an August 4, 1978, order of the Monroe County Circuit Court granting defendants' motion for an accelerated judgment of dismissal, with prejudice, of a medical

---

* Circuit judge, sitting on the Court of Appeals by assignment.

malpractice complaint. This dismissal was without prejudice to plaintiff's arbitration rights.

Roma K. Anteau first entered the defendant, Memorial Hospital, on March 12, 1977, for the treatment of a cyst. At that time, she signed a standard hospital arbitration agreement form. She signed an identical form when she returned for further treatment on March 21, 1977. The forms, which were prepared according to MCL 600.5042; MSA 27A.5042, basically provided that Mrs. Anteau and the hospital agreed to arbitrate any claims or disputes which may arise in the future out of or in connection with the health care furnished. Pursuant to the statute, the agreements further provided that Mrs. Anteau could revoke them within 60 days after discharge by written notification to a named hospital representative.

On March 22, 1977, Mrs. Anteau's cyst was removed in an operation performed by defendant, Dr. Ansari, who was assisted by the defendant, James Malone, a nurse anesthetist. Following this operation, Mrs. Anteau became comatose. On March 25, 1977, the still-comatose Mrs. Anteau was transferred from the defendant hospital to another hospital. The transfer was done without her knowledge or consent. According to plaintiff's complaint, Mrs. Anteau came out of her coma on about June 15, 1977.[1] However, she remained in the second hospital until at least October 27, 1977.

On May 24, 1977, Mrs. Anteau's estranged husband, James Anteau, petitioned to be appointed next friend to Mrs. Anteau. This petition was granted and, on the same date, James Anteau filed a medical malpractice complaint against the defen-

---

[1] Plaintiff's statement of facts on appeal state that Mrs. Anteau regained consciousness sometime in May. However, the sworn complaint indicates that the date she regained consciousness was June 15, 1977. We choose to follow the later date.

dants in his wife's behalf.[2] This complaint included a claim by Mr. Anteau for loss of consortium. The defendants responded with a motion to compel arbitration according to the terms of the agreement executed by Mrs. Anteau. In a September 20, 1977, opinion, the court granted the defendants' motion, finding that the complaint was filed 61 days after Mrs. Anteau's discharge and, thus, constituted an untimely revocation of the arbitration agreements. The complaint was then dismissed with prejudice, but without prejudice to the Anteaus' arbitration rights.

On October 24, 1977, Jacob D. Amwake, Mrs. Anteau's father, was appointed as her special guardian by the Wayne County Probate Court. In this capacity, he instituted another action in Mrs. Anteau's behalf. The defendants responded with a motion for accelerated judgment, asking that compulsory arbitration be ordered in accordance with the court's order in the first case. This motion was granted in an opinion and order issued August 4, 1978. It is this opinion and order which underlies this appeal.

---

[2] Such appointments are provided for in GCR 1963, 201.5. Subsection 2 of this court rule sets out, in pertinent part:

"(2) Appointment of Representative. Appointment of next friend or guardian ad litem shall be made by the court * * * (2) in the case of an infant party under the age of 14 years or an incompetent party, *upon the nomination of the next of kin of such party, or that of any other relative or friend whom the court deems suitable * * *.*" (Emphasis added.)

The court rule does not provide any criteria upon which the trial court is to base its determination of suitability. Research of statutory authority and Gilmore on Civil Procedure has likewise failed to reveal such criteria. In light of this consideration, we are not prepared to hold that an estranged husband's failure to communicate the facts of his estranged status to the appointing court prior to his appointment would render such appointment void *ab initio*. To so hold would undermine one of the purposes behind next friend appointments, that is, so that opposing parties may have someone responsible to them for costs, should such arise. See *Sick v Michigan Aid Ass'n,* 49 Mich 50; 12 NW 905 (1882).

The plaintiff now claims that the trial court abrogated Mrs. Anteau's due process rights when it adjudicated her an incompetent and appointed her estranged husband as her next friend without affording her notice and a reasonable opportunity to be heard on either issue. The plaintiff further argues that since the lawsuit initiated by her estranged husband was void *ab initio* due to this due process violation, the dismissal with prejudice and the arbitration orders issued by the trial court should not be held binding with respect to the litigation initiated in Mrs. Anteau's behalf by Jacob Amwake. The defendants counter by arguing that the initial arbitration order was properly obtained and that principles of res judicata would preclude the plaintiff's challenge through a subsequent lawsuit.

While the instant case is not a matter in equity and does not involve an old and feeble-minded or insane person, Justice CAMPBELL's words in *McDaniel v McCoy,* 68 Mich 332, 333-334; 36 NW 84 (1888), bear repeating:

"* * * Cases like the present depend so much upon their own facts that it is of little use to attempt to measure them by exact precedents. The equitable rules which protect old and feeble-minded or insane persons from being spoiled of their property are familiar, and not technical."

This case involves the rights of a person who was in a coma during the initiation of the next friend case and who was still in the hospital when the guardian case was filed. Under these circumstances, we will not bury our heads in the sands of legal confusion and permit clear injustice to go uncorrected. See generally, GCR 1963, 820.

At the outset, we conclude that Mrs. Anteau

revoked the arbitration agreements in a timely manner. This conclusion follows from any of three theories.

First, MCL 600.5042(3); MSA 27A.5042(3) provides:

"The agreement to arbitrate shall provide that the person receiving health care or treatment or his legal representative, but not the hospital, may revoke the agreement within 60 days after discharge from the hospital by notifying the hospital in writing."

In the present case, Mrs. Anteau was not discharged within the meaning of the statute. A simple transfer, when it was apparent that the patient still required care for a condition which arose during her hospital stay, cannot start the running of the 60-day period. If we concluded otherwise, hospitals could shuttle patients from one hospital to another simply to start the 60-day period.

Here, Mrs. Anteau was still in the second hospital in connection with her March 22, 1977, operation when the second suit was filed. Since she was not discharged from hospital care when the first and second suits were filed, the 60-day period had not even begun and her notice was effective.

Second, even assuming the 60-day period began to run when Mrs. Anteau was transferred, the trial court erred in ruling that the first lawsuit was filed 61 days after the transfer. In fact, the complaint was filed exactly 60 days after Mrs. Anteau's transfer. And, since an action is commenced by the filing of a complaint for statute of limitations purposes, *Buscaino v Rhodes*, 385 Mich 474, 481; 189 NW2d 202 (1971), by analogy, the filing of the first complaint on the 60th day after

transfer would serve to impliedly revoke the arbitration agreements. See GCR 1963, 101.

Third, even if the 60-day period of revocation provided in the arbitration agreements passed before the first claim was filed on May 24, 1977, Mrs. Anteau was unconscious until June 15, 1977. This unconscious state rendered her totally unable to revoke the arbitration agreement within the required 60-day period.

Under these circumstances, a parallel can be drawn to the general savings provisions of the Revised Judicature Act which creates exemptions from the running of statutes of limitations. See MCL 600.5851(1); MSA 27A.5851(1). This section provides those who are minors, insane or imprisoned at the time their claim accrues with a one-year grace period after their disability is removed in order to bring their action, although the period of limitations has run. Insanity is defined in this context as, "a condition of mental derangement such as to prevent the sufferer from comprehending rights he is otherwise bound to know and is not dependent on whether or not the person has been judicially declared to be insane", MCL 600.5851(2); MSA 27A.5851(2).

Clearly, Mrs. Anteau's comatose state prevented her from comprehending her rights or from exercising them in her best interests. By analogy, then, Mrs. Anteau should be given 60 days from the time her disability was removed to revoke the arbitration agreements. This raises a question of fact as to when her disability was removed and usually must be decided at trial. See *Van Buren v B & J Moving & Storage, Inc,* 54 Mich App 266, 269; 220 NW2d 746 (1974), *Davidson v Baker-Vander Veen Construction Co,* 35 Mich App 293; 192 NW2d 312 (1971). However, no one disputes the

fact that Mrs. Anteau was in a coma until about June 15, 1977. When she regained consciousness, the first case already was pending against the defendants. Therefore, defendants received notice of the revocation before the 60-day period began to run.

Under any of the foregoing theories, the next friend, or first case, revoked the arbitration agreement. The trial judge erred in concluding otherwise and the matter should have been immediately appealed. The second suit should have been a motion to substitute the guardian for the next friend. Mrs. Anteau also might have desired a substitution of attorneys. However, if we simply reinstate the second case, it is conceivable that Mrs. Anteau's estranged husband will be able to continue his claim for consortium in arbitration, even though the claim is derivative of Mrs. Anteau's claim.

Rather than try to unravel this Gordian knot with a complex series of procedural devices, we draw our judicial saber and sever the cord. We choose to view the first case as a simple revocation of Mrs. Anteau's arbitration agreements. Once the arbitration agreements were revoked, Mrs. Anteau was subject to the two-year statute of limitations for medical malpractice. See MCL 600.5805(3); MSA 27A.5805(3). The second case was filed well within the two-year period and may proceed to trial. Mrs. Anteau's estranged husband may join plaintiff in this case and present whatever pertinent claims he may have.

Reversed and remanded for proceedings not inconsistent with this opinion. Costs to appellant.