## CAPMAN v HARPER-GRACE HOSPITAL

Docket No. 78-5308. Submitted February 6, 1980, at Detroit.—Decided April 2, 1980.

Maryann Capman was admitted to Harper-Grace Hospital on December 6, 1976, to undergo surgery. On this date she executed an agreement whereby she agreed to arbitration of any medical malpractice claims. She was discharged on December 19, 1976. Then, on February 7, 1977, she was readmitted to the hospital, but to a different section. The second stay lasted until February 17, 1977. During the second hospitalization it was discovered that she had fulminate hepatitis. On April 1, 1977, Maryann Capman notified Harper-Grace Hospital by registered mail that she wished to revoke the arbitration agreement. Subsequently Maryann Capman and David Capman brought a medical malpractice action against the hospital, alleging that Maryann Capman had contracted hepatitis during her stay in the hospital in December of 1976 because of the negligence of the defendant's employees. The defendant filed a motion to submit the matter to arbitration. This motion was denied, Wayne Circuit Court, Thomas Roumell, J. The defendant appeals, by leave granted, alleging that 1) since the arbitration agreement was signed by Maryann Capman, all issues involving its interpretation must be submitted to the arbitration panel and, therefore, the trial court lacked jurisdiction to consider the plaintiffs' arguments relative to the voluntariness of Mrs. Capman's signature and the timeliness of her revocation, and 2) even if the circuit court had jurisdiction to hear plaintiffs' defenses to its motion to compel arbitration, the trial court nevertheless committed error in denying the motion

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Arbitration and Award §§ 74-76.
[2] 17 Am Jur 2d, Contracts § 153.
[3] 30 Am Jur 2d, Evidence §§ 1016, 1034.
  Admissibility of oral evidence to show that a writing was a sham agreement not intended to create legal relations. 71 ALR2d 382.
[4] 5 Am Jur 2d, Arbitration and Award § 36.
  Arbitration of medical malpractice claims. 84 ALR3d 375.

based solely on plaintiffs' arguments, absent any supporting evidence in the way of sworn testimony or affidavits. *Held:*

1. If Mrs. Capman's signature was indeed coerced, the agreement would be void or at least voidable due to such duress. Similarly, if plaintiff Maryann Capman timely revoked the agreement, no basis existed to support the defendant's motion to submit the matter to arbitration. Thus, the trial court properly exercised jurisdiction over the matter, since compulsory arbitration cannot precede a judicial determination of the validity of the agreement itself.

2. The only evidence put forth by the plaintiffs that the defendant preconditioned health care for Mrs. Capman on her signing of the arbitration agreement was the unsupported assertion of plaintiffs' counsel. This parol representation was sufficient to inject into issue the legitimate defense of coercion. However, this representation by itself was insufficient evidentiary support for a finding of coercion on the defendant's part. Therefore, the matter is remanded for further factual development.

3. The "discovery rule", which tolls the running of the statute of limitations period in a medical malpractice action until the injury has been discovered or should have been discovered, does not apply to the revocation of an agreement to arbitrate a medical malpractice claim. The plaintiffs had 60 days to revoke the arbitration agreement. The running of this period was not tolled by the plaintiffs' lack of knowledge of the existence of the injury, unless the plaintiffs can show on remand that the revocation was not timely made because Mrs. Capman was physically or mentally unable to communicate her revocation to the hospital. The issue of Maryann Capman's ability to revoke during the 60-day period shall also be considered by the trial court on remand.

Reversed and remanded for further proceedings.

1. ARBITRATION — POWER OF ARBITRATORS — COURT RULES.

Arbitrators derive their power solely from the arbitration agreement; compulsory submission to arbitration cannot precede a judicial determination of the validity of the agreement itself (GCR 1963, 769.2[2]).

2. CONTRACTS — UNDERMINING OF FREE WILL.

The existence of a coercive atmosphere which undermines the free will of one of the parties to a contract can vitiate an otherwise valid contract.

3. Evidence — Contracts — Parol Evidence — Ambiguity — Void Contracts.

  Parol evidence inconsistent with the written terms of a contract is inadmissible where no ambiguity exists in the written contract; however, parol evidence may be offered to show that the written contract is void or not a binding force.

4. Arbitration — Malpractice Arbitration Agreement — Revocation of Agreement.

  The 60-day period in which a patient may revoke a malpractice arbitration agreement after signing the agreement is not tolled by a patient's unawareness of a possible medical malpractice claim.

*Bogos & Bogos (Robert T. Benefiel),* for plaintiffs.

*Kitch, Suhrheinrich, Smith, Saurbier & Drutchas, P.C.* (by *Donald A. Ducastel),* for defendant.

Before: N. J. Kaufman, P.J., and D. E. Holbrook, Jr. and R. M. Maher, JJ.

N. J. Kaufman, P.J. Defendant appeals by leave granted from a Wayne County Circuit Court order denying its motion to compel arbitration of plaintiffs' medical malpractice action.

Plaintiff Maryann Capman was first admitted to Harper-Grace Hospital on December 5, 1976, to undergo surgery. On this date, she executed an arbitration agreement on a form provided by the defendant. She was discharged on December 19, 1976. Then, on February 7, 1977, plaintiff Maryann Capman was readmitted to a different section of the hospital complex. Her second stay lasted until February 17, 1977. At some time during this second hospitalization, it was discovered that she had fulminate hepatitis, the condition upon which this litigation is based.

On April 1, 1977, plaintiff Maryann Capman notified defendant by registered mail that she

wished to revoke the arbitration agreement. Then, on July 18, 1977, plaintiffs Maryann Capman and David Capman commenced a medical malpractice action against the defendant, alleging that plaintiff Maryann Capman contracted hepatitis during her December 5-19, 1976 hospitalization because of the negligence of defendant's employees. Defendant thereupon filed a motion to submit this matter to arbitration based on the December 5, 1976, agreement. At the hearing upon defendant's motion, plaintiffs argued that Maryann Capman was coerced into signing the arbitration agreement and that, in any event, the agreement was seasonably revoked on April 1, 1977, within 60 days after plaintiffs discovered the alleged malpractice. As stated, the trial court denied defendant's motion thereby giving rise to this appeal.

Defendant's first challenge is directed at the circuit court's jurisdiction. It is defendant's position that since there was no dispute that the form of the arbitration agreement properly complied with MCL 600.5040 *et seq.;* MSA 27A.5040 *et seq.,* and since the agreement was signed by plaintiff Maryann Capman, all issues involving its interpretation must be submitted to the arbitration panel and, therefore, the trial court lacked jurisdiction to consider plaintiffs' arguments relative to the voluntariness of Mrs. Capman's signature and the timeliness of her revocation.

We reject this contention. Arbitrators derive their power solely from the arbitration agreement. *Smith v Highland Park Board of Education,* 83 Mich App 541, 546; 269 NW2d 216 (1978), *Chippewa Valley Schools v Hill,* 62 Mich App 116, 119; 233 NW2d 208 (1975). The arguments plaintiffs raised at the hearing upon defendant's motion were material to the question of the validity of

this agreement itself. If Mrs. Capman's signature was indeed coerced, the agreement would be void or at least voidable due to such duress. Similarly, if plaintiffs timely revoked the agreement, no basis would exist to support defendant's motion. Thus, it becomes readily apparent that compulsory submission to arbitration cannot precede a judicial determination of the validity of the agreement itself. See GCR 1963, 769.2(2), which states that "[o]n application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate". See also, *Detroit Automobile Inter-Ins Exchange v Spafford,* 62 Mich App 365; 233 NW2d 283 (1975), *Grosse Pointe Farms Police Officers Ass'n v Chairman of the Michigan Employment Relations Comm,* 53 Mich App 173, 177; 218 NW2d 801 (1974).

Next, defendant asserts that assuming, *arguendo,* that the circuit court had jurisdiction to hear plaintiffs' defenses to its motion to compel arbitration, the trial court nevertheless committed error in denying the motion based solely on plaintiffs' arguments, absent any supporting evidence in the way of sworn testimony or affidavits.

Plaintiffs defended against defendant's motion on the grounds that defendant coerced Mrs. Capman into signing the agreement by informing her that no treatment would be afforded her until she signed. Additionally, plaintiffs argued that Mrs. Capman revoked the arbitration agreement within 60 days after she discovered her claim or became physically and mentally capable of such a revocation. Defendant correctly points out that these defenses were proffered solely by arguments from plaintiffs' counsel and that plaintiffs presented no supporting evidence thereupon.

First, we will examine plaintiffs' coercion de-

fense. The existence of a coercive atmosphere which undermines the free will of one of the parties can vitiate an otherwise valid contract. See *Fyan v McNutt,* 266 Mich 406, 412; 254 NW 146 (1934). Thus, if defendant did precondition plaintiff Maryann Capman's health care upon her signing the arbitration agreement, her free will might have been undermined and she might have been improperly coerced. Moreover, such a precondition is in direct violation of MCL 600.5042(2); MSA 27A.5042(2).

On the opposite side of the ledger, however, is the fact that the agreement plaintiff signed contained a bold-faced provision stating:

"This agreement to arbitrate is not a prerequisite to health care or treatment and may be revoked within 60 days after discharge * * *."

Moreover, the agreement complied with the requirements of the Malpractice Arbitration Act in all other material respects and, in such a case, a presumption of validity arises, MCL 600.5042(8); MSA 27A.5042(8). The plaintiffs then had the burden to come forward with evidence to rebut or meet this presumption. See MRE 301. As stated, the only evidence plaintiffs put forth was the unsupported assertion of plaintiffs' counsel that defendant preconditioned Maryann Capman's health care upon her signing the agreement.

Where no ambiguity exists in a written contract, parol evidence inconsistent with the written terms of the contract is inadmissible, *Ericksen v Tawas Area School Dist,* 85 Mich App 52; 270 NW2d 705 (1978). However, parol evidence may be offered " 'to show that the written contract is void, or not a binding force' ". *Rood v Midwest Matrix Mart, Inc,* 350 Mich 559, 564; 87 NW2d 186 (1957), *Orr v*

*Schmidt, Ellis & Associates, Inc,* 28 Mich App 176, 180; 184 NW2d 329 (1970). In view of the foregoing, we find that plaintiffs' parol representations did inject the legitimate defense of coercion into issue. However, we also find that the evidentiary support furnished by plaintiffs was insufficient. Therefore, we have decided to remand the present dispute for a further factual development. The trial court shall conduct a full hearing and take testimony as to what really transpired when Maryann Capman signed the instant arbitration agreement. In the interests of judicial economy, the trial court may also consider plaintiffs' allegation that plaintiff Maryann Capman was not provided with an information brochure explaining the arbitration agreement at the time she executed it, as required under MCL 600.5041; MSA 27A.5041, albeit plaintiffs first raised this question on appeal.

Finally, as to plaintiffs' contention that the arbitration agreement was timely revoked, we hold that the discovery rule does not apply to arbitration agreements. Where a statute of limitations could work a harsh result upon a person unable to recognize the existence of a claim, the discovery rule is important and necessary to temper this result by permitting a tolling of the statute. No such harsh result arises from the operation of the Malpractice Arbitration Act's 60-day period allotted for revocation. After the passage of 60 days under the arbitration statute, if the plaintiffs do not revoke the agreement, their claim is submitted to arbitration. It is not lost to them as it would be if it were time-barred under a statute of limitations. Moreover, the arbitration act's language is clear and specific requiring revocation within 60 days after discharge. The agreement incorporates this language. Plaintiffs agreed to submit any and

all of their claims to arbitration. It makes no sense to interpret this language to·mean that the 60-day period is tolled while plaintiffs are unaware of these very same claims. A different situation would present itself if the plaintiffs were physically and mentally incapable of revoking during the 60-day period as can be seen below. The arbitration act offers a fair and reasonable means for resolving disputes which the plaintiff Maryann Capman agreed to upon signing the arbitration agreement with the defendant.

Therefore, if the court based the denial of defendant's motion by applying the discovery rule and finding plaintiff Maryann Capman timely revoked her agreement, we hold that it was in error. However, if the court determined that plaintiff Maryann Capman was physically and mentally unable to communicate her revocation to the hospital within the required time or authorize her legal representative to do so and then ruled that, therefore, as a practical matter, that plaintiff was denied her opportunity to revoke, we would be inclined to agree depending upon plaintiffs' supporting evidence. See *Amwake v Mercy-Memorial Hospital,* 92 Mich App 546, 553; 285 NW2d 369 (1979). In view of the inadequacy of the record in this regard, we order the trial court to consider this issue upon remand as well.

In summary, then, we reverse and remand this case for a full evidentiary hearing. The trial court shall reconsider defendant's motion to compel arbitration in light of the discussion herein. Further, in stating its conclusion, the trial court shall set forth the findings of fact and the law upon which it is based. It should be noted that the arbitration statute is in derogation of common law. It takes away one's right to sue and have one's case heard

by a jury in a court of law. Although its objects are laudatory considering the plethora of malpractice litigation that has burdened our court dockets, the fact that it is purely a creature of statute in derogation of common law requires strict statutory compliance before arbitration may be ordered. To insure that such strict compliance was in effect herein, remand becomes necessary.

Reversed and remanded for a full hearing in accordance with this opinion. We do not retain jurisdiction.