DiPONIO v HENRY FORD HOSPITAL

Docket No. 48336. Submitted June 17, 1981, at Detroit.—Decided
    September 9, 1981. Leave to appeal applied for.
        On June 25, 1978, Dominic J. DiPonio executed an arbitration
        agreement with Henry Ford Hospital after entering the hospi-
        tal for a coronary surgical procedure. Dominic DiPonio died the
        following day while undergoing that operation. On May 22,
        1979, David DiPonio and Daniel DiPonio filed in Wayne Circuit
        Court a wrongful death medical malpractice action on behalf of
        decedent's estate against Henry Ford Hospital. While at the
        time of the filing of the action plaintiffs had not been appointed
        administrators of the decedent's estate, their August 3, 1979,
        appointment was ordered to have *nunc pro tunc* effect as of the
        date of the filing of the complaint. On July 17, 1979, defendant
        moved for accelerated judgment and an order to compel arbi-
        tration pursuant to the arbitration agreement. Plaintiffs there-
        after averred that the first time that they were aware of the
        evidence of the arbitration agreement was upon the filing of
        the defendant's motion for accelerated judgment and argued
        that the statutorily mandated 60-day period in which to revoke
        the arbitration agreement should run from the date of discov-
        ery. On August 17, 1979, Thomas J. Brennan, J., denied defen-
        dant's motion and granted plaintiffs 60 days from the date of
        plaintiffs' discovery of the arbitration agreement in which
        plaintiffs could revoke said arbitration agreement. By a letter
        dated August 17, 1979, plaintiffs revoked the arbitration agree-
        ment. Defendant appeals by leave granted. *Held:*
            1. The Malpractice Arbitration Act mandates that an agree-
        ment to arbitrate a medical malpractice claim against a health
        care provider may be revoked by the person receiving health
        care or his personal representative within 60 days after dis-
        charge from the hospital. The death of the patient while in the

References for Points in Headnotes

[1] 5 Am Jur 2d, Arbitration and Award § 36.
[2] 5 Am Jur 2d, Arbitration and Award §§ 8, 9.
[3-5] 5 Am Jur 2d, Arbitration and Award § 47.
    Death of party to arbitration agreement before award as revocation
    or termination of submission. 63 ALR2d 754.

hospital does not constitute a discharge from the hospital within the meaning of the Malpractice Arbitration Act.

2. The 60-day revocation period mandated by the Malpractice Arbitration Act was tolled until the legal representatives of the estate were appointed and vested with the authority to either revoke or ratify the arbitration agreement.

3. The 60-day revocation period mandated by the Malpractice Arbitration Act was tolled during the period of time that the legal representatives of the estate were unaware of the existence of the arbitration agreement. Only upon their discovery of the existence of the arbitration agreement did the period start to run with respect to them.

Affirmed.

1. ARBITRATION — ARBITRATION AGREEMENTS — COURTS — JURISDICTION — COURT RULES.

The question of whether there exists an agreement compelling submission of an issue to compulsory arbitration is one for judicial determination; circuit courts have jurisdiction to decide the preliminary question of whether an enforceable arbitration agreement exists (GCR 1963, 769.2[1], [2]).

2. ARBITRATION — CONSTITUTIONAL LAW — JUDICIAL CONSTRUCTION.

The enforcement of an agreement to arbitrate involves the denial of the constitutional right to a trial before a court of law, therefore, every doubt must be resolved in favor of guaranteeing that there was an intentional, willing, and knowing relinquishment or abandonment of the right to a trial before a court of law.

3. ARBITRATION — WORDS AND PHRASES — DEATH — MALPRACTICE ARBITRATION ACT — STATUTES.

The death of a patient while in a hospital does not constitute a discharge from the hospital within the meaning of the revocation of arbitration provision of the Malpractice Arbitration Act (MCL 600.5042[3]; MSA 27A.5042[3]).

4. ARBITRATION — MALPRACTICE ARBITRATION ACT — REVOCATION OF ARBITRATION AGREEMENT — DISABILITY — STATUTES.

The 60-day period mandated by the Malpractice Arbitration Act in which the arbitration agreement may be revoked is tolled with respect to the estate of a patient who had signed the arbitration agreement and died before being discharged from the hospital until such time as a legal representative is appointed and vested with the authority to revoke or ratify the

arbitration agreement (MCL 600.5042[3], 600.5851; MSA 27A.5042[3], 27A.5851).

5. Arbitration — Malpractice Arbitration Act — Revocation of Arbitration Agreement — Statutes.

The 60-day period mandated by the Malpractice Arbitration Act in which a medical malpractice arbitration agreement may be revoked is tolled, with respect to the estate of a patient who died before discharge from the hospital, during the period in which the personal representative is unaware of the existence of the arbitration agreement; the revocation period will begin to run at such time as the personal representative discovers the existence of the arbitration agreement (MCL 600.5042[3], 600.5838[2]; MSA 27A.5042[3], 27A.5838[2]).

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C. (Gromek, Bendure & Thomas, of counsel), for plaintiffs.*

*Kitch, Suhrheinrich, Smith, Saurbier & Drutchas, P.C. (by Brian J. Doren), for defendant.*

Before: V. J. Brennan, P.J., and N. J. Kaufman and E. E. Borradaile,* JJ.

V. J. Brennan, P.J. Defendant appeals from an order entered by Wayne County Circuit Court Judge Thomas J. Brennan on September 17, 1979, denying defendant's motion for accelerated judgment and to compel arbitration.

According to the lower court record, the following chronology of events occurred. Plaintiffs' decedent, Dominic John DiPonio, was admitted to Henry Ford Hospital for medical treatment on June 25, 1978. On that day, decedent voluntarily executed an arbitration agreement. The next day, June 26, 1978, decedent underwent a coronary surgical procedure and died during the course of the operation. Shortly thereafter, plaintiffs

* Circuit judge, sitting on the Court of Appeals by assignment.

through counsel requested copies of all decedent's records from the hospital defendant. The records furnished by the hospital contained no copy of the arbitration agreement.

Subsequently, on May 22, 1979, plaintiffs David DiPonio and Daniel DiPonio filed the instant wrongful death medical malpractice action on behalf of decedent's estate against defendant Henry Ford Hospital. While the caption of plaintiffs' complaint indicated that plaintiffs were co-administrators of decedent's estate, plaintiffs were not in fact appointed administrators until August 3, 1979. However, the lower court ordered the appointment to be *nunc pro tunc* as of May 22, 1979.

On July 17, 1979, defendant filed a motion for accelerated judgment and to compel arbitration pursuant to the arbitration agreement executed by decedent. In opposition to this motion, plaintiffs and their attorney averred in their affidavits that they first became aware of the arbitration agreement on July 17, 1979, when the defendant filed the motion for accelerated judgment.

The motion was heard before Wayne County Circuit Court Judge Thomas J. Brennan on August 17, 1979. The lower court denied the defendant's motion. The lower court further gave plaintiffs two months from July 17, 1979, the date when concededly the plaintiffs "discovered" the existence of the arbitration agreement, to serve upon defendant a revocation of the arbitration agreement executed by decedent.

Thereafter, in a letter dated August 17, 1979, plaintiffs revoked the arbitration agreement.

Defendant sought application for leave to appeal from the lower court's determination from this Court. The matter is now before the Court on our

grant of application for leave. We affirm the lower court.

We first address the pivotal issue of jurisdiction. The defendant suggests that, since the arbitration agreement was concededly properly executed, jurisdiction to decide all other issues was vested exclusively in the arbitration forum. In short, it says a properly executed arbitration agreement divests the circuit court from jurisdiction to decide whether or not a revocation of the agreement could be made.

This Court addressed a similar argument in *Capman v Harper-Grace Hospital,* 96 Mich App 510; 294 NW2d 205 (1980). There, it was also alleged that, since there was no dispute that the arbitration agreement complied with the statute and was duly signed, all issues involving its interpretation should have been submitted to arbitration. This Court stated:

"We reject this contention. Arbitrators derive their power solely from the arbitration agreement. *Smith v Highland Park Board of Education,* 83 Mich App 541, 546; 269 NW2d 216 (1978), *Chippewa Valley Schools v Hill,* 62 Mich App 116, 119; 233 NW2d 208 (1975). The arguments plaintiffs raised at the hearing upon defendant's motion were material to the question of the validity of this agreement itself. * * * [I]f plaintiffs timely revoked the agreement, no basis would exist to support defendant's motion. Thus, it becomes readily apparent that compulsory submission to arbitration cannot precede a judicial determination of the validity of the agreement itself." *Capman, supra,* 513-514.

The holding of the *Capman* decision is clearly applicable to the instant case. The issue of whether plaintiffs have the power to make timely revocation of the agreement goes directly to the determining of whether or not there is a valid

agreement to arbitrate. GCR 1963, 769.2(1), (2). We find that the circuit court has jurisdiction to decide such preliminary matters.

The major issue presented by this appeal is whether the plaintiffs, as personal representatives, made timely revocation of the arbitration agreement.

The Malpractice Arbitration Act provides *inter alia* that:

"(3) The agreement to arbitrate shall provide that the person receiving health care or treatment or his legal representative, but not the hospital, may revoke the agreement within 60 days after discharge from the hospital by notifying the hospital in writing." MCL 600.5042(3); MSA 27A.5042(3).

Pursuant to statutory mandate, the arbitration agreement executed by plaintiffs' decedent provided in bold face type:

"THIS AGREEMENT TO ARBITRATE IS NOT A PREREQUISITE TO HEALTH CARE OR TREATMENT, AND MAY BE REVOKED WITHIN 60 DAYS AFTER DISCHARGE BY NOTIFICATION IN WRITING * * *."

However, decedent was never discharged from the hospital. Rather, the day immediately following his execution of the agreement, June 26, 1978, he died while undergoing a heart catheterization.

Defendant now argues that decedent's "death" is analogous to a "discharge". In this regard, defendant contends that the arbitration agreement constitutes an enforceable contract and, pursuant to Michigan law, binds plaintiffs, as decedent's personal representatives, to arbitrate their wrongful death action. Defendant points to the plain lan-

guage of the statute and notes that the statute is applicable to either personal injury or death which results from malpractice. Since the statute does not contain any special provision which would give a personal representative a longer length of time (by tolling the 60-day period until appointment or until discovery of the arbitration agreement), the revocation by plaintiffs was not timely since it was not made within the 60-day period following decedent's death.

Plaintiffs aptly counter this argument on the basis of two viable analogies. They predicate their argument on the major premise that the 60-day revocation period is essentially a statute of limitation provision. Recognizing the 60 days as a statute of limitation, they then analogize on the basis of two applicable statute of limitation tolling provisions: (1) the "disability" provision of MCL 600.5851; MSA 27A.5851 and (2) the "discovery" provision of MCL 600.5838(2); MSA 27A.5838(2).

First, plaintiffs cogently argue that decedent's "death" is not analogous to a "discharge", as defendant contends. Rather, they argue that the death is more akin to the onset of a disability in that it rendered the decedent incapable of any and all ability to act on his own behalf. Furthering the analogy, they reason that the 60-day revocation period is tolled during the period of disability and does not recommence until the disability is removed. In the instant case, the disability was judicially removed by their appointment as personal representatives of decedent's estate in that it vested in them the legal authority to revoke the agreement on behalf of decedent. Plaintiffs reason that the 60-day revocation period recommences to run following the removal of the disability, *i.e.,* their appointment as personal representatives. Ac-

cordingly, since the filing of the complaint in circuit court served to revoke the arbitration agreement and the filing of the complaint was within the 60 days following their appointment, timely revocation occurred within the time limitations.

Alternatively, plaintiffs argue and the trial court reasoned on the basis of the analogous "discovery" rule of MCL 600.5838(2); MSA 27A.5838(2). This provision provides that the limitation period does not begin to run until the plaintiff discovers or should have discovered the existence of the claim. Using this analogy, the plaintiffs therefore have 60 days after the discovery of the existence of the arbitration agreement in which to exercise their power of revocation.

We are persuaded, on the basis of constitutional considerations, case law and common sense, that there is merit to both the "disability" and "discovery" theories for tolling the 60-day period allowed in which to revoke the arbitration agreement.

We reach our determination by first and foremost recognizing the constitutional dimensions of the issue. The enforcement of the arbitration agreement involves the denial of the constitutional right to a trial before a court of law. *Brown v Siang,* 107 Mich App 91; 309 NW2d 575 (1981), *Morris v Metriyakool,* 107 Mich App 110; 309 NW2d 910 (1981). Every doubt, therefore, must be resolved in favor of guaranteeing that there was an intentional, willing and knowing relinquishment or abandonment of this fundamental right.

A review of the statute clearly indicates that the 60-day revocation period is intended to provide a grace period in order to assure that there is an intentional relinquishment of the right to a trial in a court of law as well as to provide a limitation

period in order to afford a reasonable time within which revocation must be made. Neither of these purposes are furthered by allowing the 60 days to run regardless of whether there is any individual with the legal capacity to make such legal determinations as in the instant case where the decedent died prior to his discharge. Thus, we reject the simplistic argument that decedent's death is to be equated with discharge.

Rather, we hold that, upon death of the patient prior to discharge from the hospital, the 60-day revocation period must be tolled by the adoption of a tolling provision analogous to that of either "disability" or "discovery". We find support for either position in prior decisions by this Court. In *Amwake v Mercy-Memorial Hospital,* 92 Mich App 546, 553; 285 NW2d 369 (1979), this Court specially considered whether the revocation period specified by the Malpractice Arbitration Act should have a grace period based upon disability. This Court stated:

"Under these circumstances, a parallel can be drawn to the general savings provisions of the Revised Judicature Act which creates exemptions from the running of statutes of limitations. See MCL 600.5851(1); MSA 27A.5851(1). This section provides those who are minors, insane or imprisoned at the time their claim accrues with a one-year grace period after their disability is removed in order to bring their action, although the period of limitations has run. * * *

"Clearly, Mrs. Anteau's comatose state prevented her from comprehending her rights or from exercising them in her best interests. By analogy, then, Mrs. Anteau should be given 60 days from the time her disability was removed to revoke the arbitration agreements."

By similar reasoning death creates a disability which is not removed until a personal representa-

tive is appointed. Therefore, we conclude that the 60-day revocation period is tolled until a legal representative is appointed and vested with the authority to revoke or ratify the arbitration agreement.

The *Amwake* Court also held that the filing of a malpractice case serves to implicitly revoke an arbitration agreement. Since the undisputed facts of this case were that the malpractice complaint was filed on May 22, 1979 (thereby revoking the arbitration agreement) and plaintiff's appointment became effective on May 22, 1979, the conclusion naturally follows that the revocation of the agreement was timely.

Alternatively, under the facts of the instant case, we are equally convinced of the applicability of the "discovery" rule in tolling the 60-day revocation period. In the instant case, it is undisputed that the personal representatives were not aware of the existence of the arbitration agreement until defendant filed its motion for accelerated judgment. The trial court ruled that the plaintiffs had 60 days from the date they first received notice of the arbitration agreement to revoke the agreement. We affirm this decision by the lower court. In doing so, we are aware that in *Capman v Harper-Grace Hospital, supra,* 516, this Court rejected the "discovery rule" of the injury as applicable to arbitration agreements. However, the *Capman* Court added its own caveat which sufficiently distinguishes it from the present case. The *Capman* Court explained that the "discovery rule" was a remedy to prevent the harsh result which occurs when a person is unable to recognize the existence of a claim. Since the plaintiff-patient in *Capman* was not in any way disabled, the Court held that it made no sense to excuse plaintiff from the 60-day

limitation period. The Court went on to note however:

"A different situation would present itself if the plaintiffs were physically and mentally incapable of revoking during the 60-day period * * *

"[I]f * * * plaintiff * * * was physically and mentally unable to communicate her revocation to the hospital within the required time or authorize her legal representative to do so * * * as a practical matter * * * plaintiff was denied her opportunity to revoke [and] we would be inclined to [hold otherwise]." *Capman, supra,* 517.

We find that the present case is distinct from the facts of *Capman* in the very manner envisioned.

In summary, we hold that the lower court did not err in denying defendant's motion for accelerated judgment and to compel arbitration. We find that in a case where the decedent dies prior to discharge from the hospital, the 60-day revocation period is tolled until the personal representative is appointed or the existence of the arbitration agreement is discovered or should be discovered by the personal representative.

The trial court's denial of defendant's motion is affirmed.