PHILLIPS v GRACE HOSPITAL

Docket No. 195674. Submitted December 8, 1997, at Detroit. Decided
March 20, 1998, at 9:20 A.M.

Patricia A. Phillips, as personal representative of the estate of
Deborah Phillips, brought an action in the Wayne Circuit Court
against Grace Hospital, alleging medical malpractice related to
treatment received by the decedent. On motion by the defendant,
the court, Sharon Tevis Finch, J., ordered arbitration pursuant to
the medical malpractice arbitration act, 1975 PA 140, MCL 600.5040
et seq.; MSA 27A.5040 et seq., now repealed by 1993 PA 78. The
decedent had signed arbitration agreements on January 10, 1991,
and January 14, 1991, had not been admitted to the hospital on Jan-
uary 10, had been admitted to the hospital on January 14, and died
there on February 21, 1991, from complications from a hysterec-
tomy. The court determined that the January 10 arbitration agree-
ment applied to the January 14 admission and that the plaintiff's
attempt to revoke the agreement after commencing the action was
timely and effective with respect to the January 14 arbitration
agreement only. The court entered a judgment consistent with an
arbitration award in the plaintiff's favor. The plaintiff appealed,
challenging the enforcement of the January 10 arbitration agree-
ment, and the defendant cross appealed the judgment entered on
the arbitration award.

The Court of Appeals held:

Section 5042(3) of the act, MCL 600.5042(3); MSA 27A.5042(3),
provided that a medical malpractice arbitration agreement could be
revoked by a person who received health care or treatment or by
that person's legal representative within sixty days after discharge
from the hospital. When the patient died before discharge, the
sixty-day revocation period was tolled until a legal representative
vested with authority to revoke or ratify the arbitration agreement
discovered or should have discovered the existence of an arbitra-
tion agreement.

In this case, the plaintiff's attempted revocation of the January
10 arbitration agreement was timely. Although the plaintiff's attor-
ney received a copy of that agreement before the action was filed,
the plaintiff lacked information with which to discover that the

agreement applied to the January 14 admission. The plaintiff did not learn that the agreement applied to the admission until after the action was commenced, and her attempt to revoke that agreement was made within the sixty-day revocation period, as tolled for the decedent's death.

Reversed and remanded for trial.

ARBITRATION — MEDICAL MALPRACTICE ARBITRATION — REVOCATION OF ARBITRATION AGREEMENTS.

The sixty-day period within which a hospital patient or a legal representative of the patient could revoke a medical malpractice arbitration agreement after discharge, as provided in the medical malpractice arbitration act, was subject to tolling when the patient died before discharge; the period was tolled until a legal representative with authority to revoke or ratify the arbitration agreement discovered or should have discovered the existence of the arbitration agreement (1975 PA 140, MCL 600.5040 *et seq.*; MSA 27A.5040 *et seq.*, repealed by 1993 PA 78).

*Goodman, Eden, Millender & Bedrosian* (by *Barbara A. Patek*), for the plaintiff.

*Saurbier, Paradiso, Davis & Perrin, P.L.C.* (by *David Steiger*), for the defendant.

Before: SAWYER, P.J., and WAHLS and REILLY, JJ.

WAHLS, J. Plaintiff originally filed this medical malpractice action in the Wayne Circuit Court. On defendant's motion, the trial court, on the basis of a signed arbitration agreement form, ordered the case to arbitration. After an arbitration award in plaintiff's favor, the trial court entered a judgment in the amount of $278,497.80 against defendant. Plaintiff now appeals as of right from the trial court's decision to enforce the arbitration agreement and from the judgment entered on the arbitration award. Defendant cross appeals from the judgment. We reverse and remand for a trial.

Plaintiff argues that the trial court erred in enforcing an arbitration agreement between plaintiff's decedent and defendant. We agree. Because of the unique circumstances of this case, a detailed review of the facts is necessary.

On January 10, 1991, plaintiff's decedent, Deborah Phillips, had a preoperative meeting with her doctor, Saeed Saleh, regarding a hysterectomy. At that time, she signed an arbitration agreement form ("the January 10 form"), which required her to arbitrate any claims against defendant, its employees, and its independent staff doctors and consultants arising out of "THIS hospital stay." Phillips was not admitted to the hospital on January 10, 1991, and there is nothing on the face of the form identifying what "hospital stay" it refers to. However, there was unrebutted evidence that Phillips and Dr. Saleh both understood the agreement to apply to the upcoming hospital stay relating to Phillips' hysterectomy. On January 11, 1991, Phillips visited the hospital for preoperative tests, but she apparently was not "admitted" under the hospital's definition of that term.

On January 14, 1991, Phillips was admitted to the hospital for her hysterectomy. At that time, she signed another arbitration agreement form ("the January 14 form"), which was essentially identical to the January 10 form. Phillips underwent the operation, but developed complications during her recovery and died on February 21, 1991, never having left the hospital. On March 7, 1991, plaintiff, Phillips' sister, was appointed personal representative of her estate. In August or September of 1991, plaintiff's counsel was provided with copies of Phillips' medical records, which included a copy of the January 10 form, but appar-

ently did not include a copy of the January 14 form. Plaintiff filed the current suit in March 1993. During discovery, plaintiff was provided with a copy of the January 14 form. Plaintiff then attempted to revoke "any Arbitration Agreements signed by [Phillips] during her hospitalization at Grace Hospital of January 14, 1991." The trial court found plaintiff's revocation valid with respect to the January 14 form, but eventually held that plaintiff had never revoked the January 10 form, and ordered arbitration on that basis.

At the time of Phillips' hospitalization, the medical malpractice arbitration act (MMAA), 1975 PA 140, MCL 600.5040 *et seq.*; MSA 27A.5040 *et seq.*, governed the arbitration agreement in this case.[1] The act provided, inter alia:

> The agreement to arbitrate shall provide that the person receiving health care or treatment or his legal representative, but not the hospital, may revoke the agreement within 60 days after discharge from the hospital by notifying the hospital in writing. [MCL 600.5042(3); MSA 27A.5042(3).]

The statute did not define "discharge." This presents an obvious problem in a case where the patient dies, because the patient is unable to exercise the right to revoke the agreement. Another panel of this Court addressed this situation in *DiPonio v Henry Ford Hosp*, 109 Mich App 243; 311 NW2d 754 (1981). The panel there stated:

> A review of the statute clearly indicates that the 60-day revocation period is intended to provide a grace period in order to assure that there is an intentional relinquishment of the right to a trial in a court of law as well as to provide

---

[1]  The MMAA was repealed by 1993 PA 78.

a limitation period in order to afford a reasonable time within which revocation must be made. Neither of these purposes are furthered by allowing the 60 days to run regardless of whether there is any individual with the legal capacity to make such legal determinations as in the instant case where the decedent died prior to his discharge. Thus, we reject the simplistic argument that decedent's death is to be equated with discharge.

. . . [D]eath creates a disability which is not removed until a personal representative is appointed. Therefore, we conclude that the 60-day revocation period is tolled until a legal representative is appointed and vested with the authority to revoke or ratify the arbitration agreement. [*Id.* at 250-252.]

The panel in *DiPonio* also suggested that the sixty-day revocation period should be tolled until the personal representative discovers or should have discovered the existence of the arbitration agreement. *Id.* at 253.

Although we are not bound by the decision in *DiPonio*, we find its reasoning persuasive. In particular, we agree that the sixty-day revocation period after discharge was intended to give patients a grace period to ensure that their decision was intentional. Indeed, the fact that the grace period does not begin to run until discharge means that the patient is given the opportunity to reevaluate a decision to arbitrate in light of the patient's treatment during that particular hospital stay. A patient who dies in the hospital should not lose the right to revoke an arbitration agreement.[2] The only way to give effect to a deceased patient's right to revoke is to give the personal representative the same sixty-day grace period to which the patient would have been entitled had the patient

---

[2] This is especially true where the patient's death may be due to the hospital's negligence.

lived. The difficulty comes in determining when the sixty-day period should begin to run.

The panel in *DiPonio* analogized the sixty-day grace period for revocation of arbitration agreements to the statute of limitation in a medical malpractice action. That panel then applied a "discovery" tolling provision similar to that found in MCL 600.5838(2); MSA 27A.5838(2) to the right to revoke an arbitration agreement.[3] *DiPonio, supra* at 250-253. We believe that this analogy and application were essentially appropriate,[4] and we adopt the analysis in *DiPonio* as our own.

Before we can apply the rule articulated in *DiPonio* to the current case, we must clarify the parties' contractual status based on the two separate arbitration agreement forms at issue. The parties and the trial court treated the two different forms as two different

---

[3] MCL 600.5838(2); MSA 27A.5838(2) applies to malpractice claims and states, in part:

[A]n action involving a claim based on malpractice may be commenced at any time within the applicable period prescribed [by statute], or within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later.

[4] To the extent that we are trying to put the personal representative in the same position as the patient, we recognize that the adoption of this "discovery" provision is a necessarily imperfect solution: A patient who signs an arbitration agreement form, and who does not die while in the hospital, is presumably aware of the agreement's existence when discharged. The personal representative, on the other hand, does not necessarily have any independent knowledge of the agreement. Thus, where the personal representative should have discovered the existence of the agreement, but has not, the sixty-day period begins to run before the personal representative is actually aware of the agreement. However, we believe that a "discovers or should have discovered" rule strikes the appropriate balance between the legislative intent to allow a grace period for revocation and the legislative intent to provide a period of limitation. See *DiPonio, supra* at 250-251.

agreements.[5] However, a contract or agreement is not equivalent to the piece of paper it is written on. That is, the paper evidences the agreement, but the agreement exists separately from the piece of paper. Here, the two forms contain identical terms, involve the same parties, and, on the basis of the trial court's findings of fact, apply to the exact same subject matter. Under these circumstances, it is clear that the parties had only one agreement, which was evidenced by two different pieces of paper.[6] Clearly, the right to revoke under MCL 600.5042(3); MSA 27A.5042(3) applies to the agreement itself, not the pieces of paper evidencing the agreement.

Applying *DiPonio* to this factual situation, the crucial question becomes: When did plaintiff discover, or when should she have discovered, the existence of the arbitration agreement? The trial court concluded that plaintiff should have discovered and revoked the arbitration agreement when her attorney saw the January 10 form in Phillips' medical records. We disagree. Before plaintiff filed suit, the January 10 form was the only evidence she had of the arbitration agreement. We conclude that this evidence alone was insufficient to permit a finding that plaintiff should have discovered the arbitration agreement. There is

---

[5] For example, at an evidentiary hearing defendant argued that plaintiff "never undertook to revoke this *form*." (Emphasis added.)

[6] We note that this result follows only where the parties, the terms, and the subject matter of the two forms are identical. If the parties on each form were different, two different agreements would exist. If the subject matter on the forms were different, as where the forms pertained to two different hospital stays, there would be two agreements. If the terms on the two forms were different, but the parties and subject matter were the same, there would be two agreements, but the second agreement would likely be considered a modification, or an implicit revocation, of the first.

no information on the face of the January 10 form regarding what hospital stay it applies to.[7] The form simply says: "This agreement applies to my care during THIS hospital stay and/or emergency room visit." Phillips was not admitted to the hospital on January 10, 1991. Where the form contains no other information and Phillips was neither in the hospital nor admitted to the hospital on the date it was signed, plaintiff had no way of knowing that the form constituted an agreement regarding Phillips' hospital stay beginning on January 14, 1991.[8] Clearly, a personal representative should not be required to guess which forms applied to the hospital stay at issue, nor should she be required to revoke all arbitration agreements in order to revoke the relevant one.[9] Thus, the sixty-day period should not begin to run until the personal representative discovers or should have discovered that an *applicable* arbitration agreement existed.

---

[7] The January 14 form, as well as two other arbitration forms found in Phillips' medical file, had a patient stamp on their face that gave additional information. That information included, among other things, Phillips' name, social security number, sex, date of birth, her physician's name, and, most importantly, a date of admission.

[8] There were a number of other arbitration agreement forms in Phillips' medical records. One of those forms, dated October 7, 1987, contains no more information than the form dated January 10, 1991. The only significant difference between the forms is the date. Presumably, the form signed in 1987 applied to some earlier hospital stay, but, absent testimony from someone who was there when the form was signed, there is no way to know for sure. The existence of such a form highlights the fact that plaintiff's attorney had to rely on the date of the form alone in determining which hospital stay it applied to.

[9] Obviously, a patient who has had several hospital stays and who has entered into corresponding arbitration agreements may elect to revoke some of those agreements and enforce the others. For example, in reviewing Phillips' medical records, we discovered five different arbitration forms. We see no reason why plaintiff should have been required to revoke all agreements corresponding to those forms.

In this case, plaintiff's attorney testified that she reviewed Phillips' medical records and determined that the January 10 form did not apply to the January 14, 1991, admission. Her reasoning involved the fact that there was no patient stamp on the form and the fact that the form was found among hospital paperwork regarding Phillips' hospital visit on January 11, 1991. The trial court eventually concluded that the January 10, 1991, form did apply to the January 14, 1991, admission. However, this finding was based on information not available to plaintiff's attorney before the current suit was filed, namely, the testimony of Dr. Saleh and other hospital personnel.[10] The fact that plaintiff's attorney eventually proved to be wrong in her conclusion regarding the January 10 form has no bearing on the question whether she should have discovered the existence of an arbitration agreement. On the basis of the information she had, we believe that plaintiff's attorney's conclusion was reasonable; until she heard Dr. Saleh's testimony, she had no way of discovering that the January 10 form applied to the January 14 admission.[11] Under these circumstances, it cannot be said that plaintiff "should have discovered" the existence of an applica-

---

[10] This testimony involved the circumstances surrounding the signing of the form, and the hospital's general policy regarding admissions.

[11] For instance, Dr. Saleh could just as well have testified that Phillips' preoperative tests on January 11 involved minor "out-patient surgery" to which the agreement was intended to apply. In addition, the agreement could have applied to a previous hospital stay. *Harte v Sinai Hosp*, 144 Mich App 659, 665; 375 NW2d 782 (1985), rejected in part on other grounds in *Villarreal v Chun*, 199 Mich App 120, 122; 501 NW2d 227 (1993). Thus, we are not persuaded by defendant's argument that plaintiff should have known that the January 10 form applied to Phillips' next admission.

ble arbitration agreement when her attorney saw the January 10 form.

We conclude that plaintiff's attorney did not have sufficient information with which to discover the arbitration agreement until after the current suit was filed. As a previous panel of this Court has held, the filing of a lawsuit implicitly revokes an applicable arbitration agreement. *DiPonio, supra* at 252; *Amwake v Mercy-Memorial Hosp*, 92 Mich App 546, 552-553; 285 NW2d 369 (1979). Thus, revocation in this case was timely, and the trial court erred in ordering arbitration.

In light of our resolution of this issue, we need not address the additional issues raised by the parties on appeal and cross appeal. The trial court's order sending this case to arbitration and the judgment entered on the arbitration award are reversed. This matter is remanded for a trial.