BOIKO v HENRY FORD HOSPITAL

Docket No. 49326. Submitted May 12, 1981, at Detroit.—Decided October 20, 1981.

Raymond Boiko died of a heart attack while he was a patient in Henry Ford Hospital. Arlene Boiko, administratrix of the estate of Raymond Boiko, deceased, brought an action sounding in malpractice and charging wrongful death against the hospital. Defendant filed a motion for accelerated judgment and to compel arbitration in compliance with an arbitration agreement signed by the decedent at the time he was admitted to the hospital. The Wayne Circuit Court, James Montante, J., denied the motion, finding that the agreement was unenforceable as never having come into being because of the impossibility of revocation by the decedent. Defendant appeals by leave granted. *Held:*

1. An arbitration agreement is revocable by either the patient or his legal representative within 60 days after discharge from the hospital.

2. A legal representative of a decedent who died while a patient in a hospital has 60 days from the time he or she is appointed to revoke any arbitration agreements signed by the decedent prior to admission to the hospital.

3. The arbitration agreement should have been held to be valid and binding on plaintiff since she did not act quickly enough to revoke it. The trial court's denial of defendant's motion to compel arbitration is reversed.

Reversed.

1. STATUTES — JUDICIAL CONSTRUCTION — LEGISLATIVE INTENT.

A legislative enactment should be read as a whole so as to harmonize the meaning of its separate provisions and give effect to the Legislature's intent.

REFERENCES FOR POINTS IN HEADNOTES
[1] 73 Am Jur 2d, Statutes § 254.
[2] 5 Am Jur 2d, Arbitration and Award § 47.
   61 Am Jur 2d, Physicians, Surgeons and Other Healers § 376.

2. NEGLIGENCE — MEDICAL MALPRACTICE — ARBITRATION AGREE-
    MENTS — HOSPITALS — REVOCATION — LEGAL REPRESENTATIVES
    — STATUTES.

> The legal representative of a patient who dies while undergoing
> medical treatment has 60 days from the time he or she is
> appointed to revoke any arbitration agreements signed by the
> decedent prior to his admission to a hospital (MCL 600.5042[3];
> MSA 27A.5042[3]).

*Zeff & Zeff* (by *Howard J. Radner*), for plaintiff.

*Kitch, Suhrheinrich, Smith, Saurbier & Drut-
chas, P.C.* (by *Brian J. Doren*), for defendant.

Before: D. F. WALSH, P.J., and D. C. RILEY and
R. D. KUHN,* JJ.

D. C. RILEY, J. Defendant appeals, by leave
granted, an order entered on November 30, 1979,
by the Wayne County Circuit Court, denying de-
fendant's motion for accelerated judgment and to
compel arbitration.

The facts, as agreed upon by the parties, are
straightforward. On April 17, 1977, decedent Ray-
mond Boiko was admitted to Henry Ford Hospital.
At the time of admission, Boiko signed a medical
malpractice arbitration agreement. It is stipulated
that he signed the agreement voluntarily, that the
hospital personnel complied in all respects with
statutory requirements and that the agreement
complied with all of the statutory requirements
also, including sufficient notice of the legal repre-
sentative's right to revoke the agreement.

The medical malpractice arbitration agreement
provided that the patient, Raymond Boiko, under-
stood:

---

* Circuit judge, sitting on the Court of Appeals by assignment.

"[T]hat this agreement to arbitrate is binding on me, and all my agents, representatives and heirs and assigns, as well as on this hospital, its employees and those of its independent staff doctors and consultants who have agreed to arbitrate."

In addition, the agreement provided:

"This agreement to arbitrate is not a prerequisite to health care or treatment, and may be revoked within 60 days after discharge by notification in writing to [the hospital]."

Raymond Boiko died of a heart attack in the hospital on April 28, 1977. He had not, prior to that time, made any attempt to revoke the arbitration agreement. On September 13, 1978, plaintiff, Arlene Boiko, was appointed as administratrix of Raymond Boiko's estate. Plaintiff filed suit sounding in malpractice and charging wrongful death on April 20, 1979, against defendant hospital.

Defendant, thereafter, filed a motion for accelerated judgment and to compel arbitration based on the arbitration agreement. The trial court denied the motion based on the following rationale:

"The arbitration agreement involved is nonenforceable because of the death of Raymond Boiko in defendant Henry Ford Hospital, the agreement never having come into being as far as Raymond Boiko is concerned because the opportunity to revoke within 60 days after discharge proved to be an impossibility in that Mr. Boiko was never 'discharged' from Henry Ford Hospital."

The trial court certified the following question of law for our consideration:

"When a patient signs a medical malpractice arbitra-

tion agreement while a patient admitted to a hospital in complete conformance with [MCL 600.5040 *et seq.;* MSA 27A.5040 *et seq.,]* but the patient dies during the course of his hospital admission, is the arbitration argeement thereby rendered nonenforceable on the basis that the patient was not 'discharged' from the hospital and the right to revoke thus impossible."

The Michigan Medical Malpractice Arbitration Act provides in pertinent part:

"(1) The provisions of this chapter shall be applicable to the arbitration of a dispute, controversy, or issue arising out of or resulting from injury to, *or the death of,* a person caused by an error, omission, or negligence * * *." MCL 600.5040(1); MSA 27A.5040(1). (Emphasis added.)

Additionally, this act also provides:

"(3) The agreement to arbitrate shall provide that the person receiving health care or treatment *or his legal representative,* but not the hospital, may revoke the agreement within 60 days after discharge from the hospital by notifying the hospital in writing." MCL 600.5042(3); MSA 27A.5042(3). (Emphasis added.)

Although the question before us is one of first impression in this state, we are guided in our decision by a cardinal rule of statutory construction. That rule, as stated in *Washtenaw County v Saline River Intercounty Drainage Board,* 80 Mich App 550, 555; 264 NW2d 53 (1978), is that "legislative enactments be read as a whole so as to harmonize the meaning of their separate provisions and give effect to the Legislature's intent".

Section 5040(1) evidences a strong legislative intent that the provisions of the arbitration statute apply not only to disputes arising out of or

resulting from injury but also to disputes concerning death. As defendant points out in its brief, the trial court's ruling effectively precludes the arbitration of disputes in hospital-death cases. A holding that the agreement was valid and thus binding on Boiko's representative, in spite of Boiko's death in the hospital, would seem to promote a reasonable interpretation and application of both the arbitration statute and the agreement.

The trial court's holding also appears to conflict with § 5042(3), which provides that an agreement may be revoked by either the individual who received treatment or his legal representative. This clearly contemplates the application of the act to death cases since in personal injury actions the patient himself would have the right to revoke, while in death actions that right would rest with decedent's legal representative. We note that the act contains no provision suggesting that its application to death actions is limited to cases where such death results after discharge. Furthermore, if, as plaintiff argues, the act is only applicable in cases where the patient does not die until after 60 days subsequent to discharge, § 5042(3), which gives the legal representative the right to revoke within 60 days after discharge, would be superfluous since the legal representative of a decedent is not normally appointed until after the decedent's death.

Perhaps more fundamentally, we cannot agree with the trial court's reasoning that the agreement "never came into being" because the "opportunity to revoke within 60 days after discharge proved to be an impossibility".

First, the court's conclusion is necessarily based on the premise that an agreement or contract is not enforceable if it includes a revocation or termi-

nation period and circumstances result in the inability of a party to take advantage of the possibility of termination. Such a premise is without support either in the arbitration agreement signed in this case or in the arbitration act itself. While § 5042(3) provides that the arbitration agreement must indicate that it is revocable by either the patient or his legal representative within 60 days after discharge, it does not indicate that the patient's ability to take advantage of the opportunity to revoke is essential to the existence of a binding agreement.

While it may be the case that the death of the patient and subsequent delay in the appointment of a legal representative may justify an extension of time in which the agreement can be revoked, as will be discussed below, this is not the same as concluding, as did the trial court, that the agreement "never came into being" or was "unenforceable" from the beginning. Such a conclusion is contrary to elementary principles of contract law since it is construing a revocation or termination provision as establishing a condition precedent to the existence of a binding contract. 6 Corbin, Contracts, § 1266, p 54 *et seq.*

Accordingly, we conclude that it was not necessary for the decedent to be discharged from the hospital before his death in order for the agreement to be binding on him and his legal representative. Our ruling, however, necessitates our consideration of when the 60-day period, during which the legal representative of the decedent must revoke in order to avoid enforcement, of the agreement begins to run.

Initially, it would seem reasonable to equate death with the term "discharge" and hold that the 60-day period begins to run for the representative

upon either the death or discharge of the patient. This is the position that defendant espouses in its brief.

We are of the opinion, however, that to strictly equate death of a patient with "discharge" as the point from which the 60-day period runs may result in injustice in those cases where, as here, more than 60 days pass after death before the appointment of a legal representative. In point of fact, this would probably prevent the legal representatives in most cases from taking advantage of the intended period of revocation. In other situations, this Court has expressed a sensitivity to the importance of insuring that a person is able to take advantage of the opportunity to revoke. For example, in *Amwake v Mercy-Memorial Hospital*, 92 Mich App 546, 553; 285 NW2d 369 (1979), it was held that a comatose person who was unable to comprehend her rights or exercise them in her best interest during the running of the 60-day period "should be given 60 days from the time her disability was removed to revoke the arbitration agreements". By analogy, we believe a legal representative of a decedent should have 60 days from the time he or she is appointed and thus vested with the legal authority to revoke the agreement. Where a patient is unable to revoke due to death, to deny the opportunity to revoke to his legal representative who did not have the authority to revoke until his appointment after the 60-day period had run would be contrary to the policy expressed in *Amwake, supra.*

Despite our ruling, plaintiff did not act quickly enough in the instant case so as to revoke the arbitration agreement. She made no attempt to revoke the agreement within 60 days of Boiko's death nor within 60 days of her appointment as

his legal representative. Even though the filing of a complaint has been held to constitute an implied revocation of an arbitration agreement, *Amwake, supra,* 552-553, this action was not filed until seven months after plaintiff's appointment.

Therefore, we conclude that the arbitration agreement in this case should have been held valid and binding upon plaintiff, and the trial court's denial of defendant's motion to compel arbitration is hereby reversed. Such a result is not unduly harsh on plaintiff. As was emphasized by this Court in *Capman v Harper-Grace Hospital,* 96 Mich App 510, 517; 294 NW2d 205 (1980), to enforce an arbitration agreement where the revocation period has passed merely means that the claim must be submitted to arbitration, "a fair and reasonable means for resolving disputes which the [decedent] agreed to upon signing the arbitration agreement with the defendant".

The other issues raised need not be decided as they have not been properly preserved for appellate review.

Reversed.

Costs to abide the outcome.